IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL PIKYAVIT,<br><br>                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | **MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Crim. Case No. 2:06-cr-407-PGC<br>Civ. Case No. 2:16-cv-00729-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Petitioner Russell Pikyavit's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1).

## BACKGROUND

Petitioner is currently incarcerated in federal prison. In 2007, Petitioner was convicted of being a felon in possession of ammunition under 18 U.S.C. § 922(g)(1) and sentenced to 180 months of incarceration. Though the offense itself carried a penalty of at most 120 months in prison, the court enhanced Petitioner's sentence by sixty months pursuant to the Armed Career Criminal Act (ACCA), which provides a mandatory minimum of fifteen years for any individual convicted under § 922(g)(1) who also has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* § 924(e)(1). Court documents did not indicate which of Petitioner's prior convictions justified the sentence, but his criminal history included at least one conviction for distribution of a controlled substance, two convictions for assault by prisoner, and a conviction for burglary.

On June 26, 2015, after Petitioner had served approximately nine years of his fifteen-year sentence, the Supreme Court decided *Johnson v. United States (Johnson II)*, 135 S. Ct. 2551

1

(2015). The Court there held that the so-called residual clause of § 924(e) of the ACCA was unconstitutionally vague. *Id.* at 2257. The next year, the Court held that the *Johnson II* decision had announced a substantive rule that must be applied retroactively on collateral review of sentences imposed under the unconstitutional residual clause. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

On June 27, 2016, Petitioner filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255(a),[1] arguing that *Johnson II* rendered his sentence under the ACCA unconstitutional. (Docket No. 1). The government opposed Petitioner's Motion in a memorandum filed September 14, 2016, arguing that Petitioner's sentencing enhancement under the ACCA was not affected by *Johnson II* because his convictions for assault by prisoner were still categorically violent felonies under the Act. (Docket No. 7). Petitioner filed a reply to the government's opposition memorandum on November 14, 2016. (Docket No. 15).[2] The court heard oral argument on the Motion on January 10, 2017, and now renders a decision under jurisdiction granted by § 2255(a).

## DISCUSSION

Petitioner asks this court to vacate and correct his 180-month sentence by striking the sixty-month enhancement applied to his sentence pursuant to the ACCA. The ACCA requires a

---

[1] Section 2255(a) provides for collateral attack of an allegedly unconstitutional or improper sentence by petition to the court that imposed the sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

[2] On January 6, 2017, the government filed a notice of supplemental authority pursuant to DUCrimR 12-1(b)(5). (Docket No. 17). Petitioner filed a response that engaged in some legal argument regarding the supplemental authority, among other things. (Docket No. 18). The government quickly filed a Motion to Strike Petitioner's Response on January 9, 2017. (Docket No. 19). The court **DENIES** that Motion (Docket No. 19) and instead considers the text of the Motion as the government's reply to Petitioner's response.

fifteen-year mandatory minimum sentence when a defendant charged under 18 U.S.C. § 922(g) has a criminal history that includes "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1); *see also United States v. Harris*, 844 F.3d 1260, 1262 (10th Cir. 2017) ( "The ACCA requires a fifteen-year mandatory minimum sentence when the defendant has [a criminal history that includes] three or more qualifying 'violent felonies.'" (quoting § 924(e)(1))). Under the ACCA, a "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year," that falls under one of three categorical clauses listed under § 924(e)(2)(B). *See id.* § 924(e)(1)–(2). First, the "elements" or "force" clause indicates that a crime of conviction qualifies as a violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). Next, the "enumerated-offenses" clause outlines certain generic offenses that are categorically violent felonies under the ACCA, such as "burglary, arson, . . . extortion, [or another crime which] involves the use of explosives." *Id.* § 924(e)(2)(B)(ii). Finally, the "residual" clause defines as a violent felony any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* As described above, the Supreme Court recently held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Johnson II*, 135 S. Ct. at 2563. The Court later held that this decision applied retroactively to sentences imposed pursuant to the residual clause. *Welch*, 136 S. Ct. at 1265.

Petitioner argues that, after *Johnson II*, he does not have three convictions that would qualify as a violent felony or serious drug crime, invalidating his previous sentencing enhancement under the ACCA. Petitioner's criminal history includes convictions in Utah state court for several different felonies that could have necessitated a sentencing enhancement under

§ 924(e)(1) prior to *Johnson II*: a conviction for burglary in 1983, a conviction for assault by prisoner in 1996, a conviction for distribution of a controlled substance in 1997, and another conviction for assault by prisoner in 2000. Neither party disputes that Petitioner's conviction for distribution of a controlled substance qualifies as a "serious drug offense" under § 924(e)(1). Instead, Petitioner and the government devote the bulk of their arguments to the two assault by prisoner convictions, rightly concluding that the status of these convictions as violent felonies under § 924(e)(1) is dispositive of Petitioner's motion.[3]

> At the time of Petitioner's conviction,[4] Utah's assault by prisoner statute provided:
>
> Any prisoner who commits assault, intending to cause bodily injury, is guilty of a felony in the third degree.

UTAH CODE § 76-5-102.5 (1995). An element of this offense is the commission of an assault. At the time of conviction,[5] assault was defined as:

> (a) [A]n attempt, with unlawful force or violence, to do bodily injury to another; (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or (c) an act committed with unlawful force or violence, that causes or creates a substantial risk of bodily injury to another.

*Id.* § 76-5-102 (1995). Additionally, "bodily injury" was defined in the Utah Code as "physical pain, illness, or any impairment of physical condition." *Id.* § 76-5-101 (1995).

---

[3] For this reason, the court need not address Petitioner's argument regarding his burglary conviction. Were the court to employ the modified categorical approach, *see United States v. Ridens*, 792 F.3d 1270, 1272–74 (10th Cir. 2015) (explaining and applying the modified categorical approach), and turn to charging documents to determine whether each of Petitioner's convictions for assault by prisoner were properly categorized as violent felonies, it is possible that one conviction could be categorized as a violent felony based on the charging documents while the other could not. In that instance, analysis of Petitioner's arguments regarding the burglary conviction would be necessary, but as explained below, the court is able to resolve this Motion without resort to the modified categorical approach.

[4] The statute is identical in its current form. *See* § 76-5-102.5 (2015). However, although the court believes that the outcome would be identical under either the 1995 version of the statute cited by the parties or the current version, all references to the statute in this decision refer to the 1995 version unless otherwise noted.

[5] Utah's assault statute is somewhat altered since Petitioner's convictions—the current version replaces subsection (b) (the threat clause) with a clarified version of the former subsection (c): "an act, committed with unlawful force or violence, that causes bodily injury to another or creates substantial risk of bodily injury to another." *See* § 76-5-102(1)(b) (2015). Otherwise, the statute is substantively unchanged. Again, all references in this decision refer to the 1995 version unless otherwise noted.

Petitioner argues that his previous convictions under the assault by prisoner statute could only qualify as violent felonies under the unconstitutional residual clause and, as a result, his enhanced 180-month sentence must be vacated. The government counters that Utah's assault by prisoner statute "has as an element the use, attempted use, or threatened use of physical force against the person of another," *see* 18 U.S.C. § 924(e)(2)(B)(i), and therefore Petitioner's convictions for that crime properly qualify as violent felonies under the elements clause. Both parties acknowledge that sentences imposed pursuant to the residual clause are unconstitutional and assault by prisoner is not an enumerated offense under § 924(e)(2)(B)(ii). As a result, Petitioner's sentencing enhancement may survive only if, as the government argues, assault by prisoner may properly be categorized as a violent felony under the elements clause. *See Harris*, 844 F.3d at 1262–63 ("Because *Johnson II* eliminated . . . the residual clause[,] . . . prior residual-clause convictions must now stand or fall based on an analysis under the elements clause."). Therefore, the question before the court is whether Utah's assault by prisoner statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" as required by the elements clause. *See* § 924(e)(2)(B)(i).

The Tenth Circuit has previously held, in an unpublished opinion, that Utah's assault by prisoner statute is categorically a violent felony under the ACCA because it requires the "'commission of assault,' which by definition requires the use of force." *United States v. Tahguv*, 264 F. App'x 719, 723 (10th Cir. 2008) (unpublished) (quoting UTAH CODE § 76-5-102.5). Adopting this reasoning, two other courts in this district have recently concluded that assault by prisoner is categorically a violent felony under the elements clause. *See Montoya v. United States*, No. 1:16-cv-00084-TC, 2016 WL 6810727 at *7–8 (D. Utah Nov. 17, 2016) (unpublished); *Ama v. United States*, 149 F. Supp. 3d 1323, 1328 (D. Utah 2016), *appeal*

*docketed*, No. 16-4039 (10th Cir. Mar. 29, 2016). Most recently, another court in this district held that assault by prisoner is not categorically a violent felony because it does *not* require the use or threatened use of physical force. *Horrocks v. United States*, No. 2:16-cv-00667-DS (D. Utah Jan. 9, 2017) (oral ruling vacating petitioner's sentence), *appeal docketed*, No. 17-4017 (10th Cir. Feb. 9, 2017). Petitioner correctly asserts that none of these cases are binding on this court. *See* DUCivR 7-2(a) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."); *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131 S. Ct. 2020 (2011) (indicating that federal district court decisions are not binding on courts within the same judicial district). He also insists that none of the cases holding that assault by prisoner is categorically a violent felony have clearly addressed the specific substantive arguments he has raised. Thus, he requests that this court independently evaluate whether Utah's assault by prisoner statute qualifies as a violent felony under the elements clause.

To determine whether Utah's assault by prisoner statute is a violent felony under the elements clause, the court must employ a categorical approach. *Harris*, 844 F.3d at 1263 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)). This categorical approach requires an evaluation of both federal and state law. *See id.* at 1264. The court first looks to federal law to define the phrase "use, attempted use, or threatened use of physical force against the person of another" as it appears in § 924(e)(2)(B)(i). *See Johnson v. United States (Johnson I)*, 559 U.S. 133, 138 (2010). Then, in order to determine whether a particular state offense falls under the federal definition, the court looks to state law to identify the "substantive elements" of the offense. *Harris*, 844 F.3d at 1264 (citing *Johnson I*, 559 U.S. at 138). Finally, the court determines whether the state offense is a "categorical match" with the federal definition of a violent felony under the elements clause. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684

(2013). This final inquiry must be conducted by viewing the state offense "in the abstract," *id.*, "focusing on the elements of the crime of conviction, not the underlying facts," *Harris*, 844 F.3d at 1263 (citing *Descamps*, 133 S. Ct. at 2283). Accordingly, the court "must presume that the [state] conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by" the federal definition. *Moncrieffe*, 133 S. Ct. at 1684 (alterations in original) (quoting *Johnson I*, 559 U.S. at 137). Nevertheless, the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic [federal] definition of a crime.'" *Id.* at 1684–85 (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S. Ct. 815 (2007)).

In this case, if the least culpable conduct punishable under the assault by prisoner statute does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," *see* 18 U.S.C. § 924(e)(2)(B)(i), the conviction cannot qualify as a violent felony under the ACCA. Petitioner argues that Utah's assault by prisoner offense is not categorically a violent felony under the elements clause for two reasons. First, he argues that the offense does not necessitate that physical force be directed "against the person of another" as required by the elements clause. Second, he argues that the assault by prisoner statute may be violated by a lesser degree of physical force than is required under the elements clause. The court will address each argument in turn.

## I.    Against the Person of Another

Petitioner first argues that Utah's assault by prisoner offense cannot be a violent felony under the ACCA because the statute could be interpreted to criminalize the application of force

"exclusively against property that creates a substantial risk of injury to another person." (Docket No. 15, at 6). In support of this argument, Petitioner points to *State v. Wareham*, 143 P.3d 302 (Utah Ct. App. 2006), where the Utah Court of Appeals held that "violently ransack[ing]" a victim's home in the victim's presence could reasonably be construed as an assault under subsection (c) of UTAH CODE § 76-5-102, which defines assault as "an act, committed with unlawful force or violence, that . . . creates a substantial risk of bodily injury to another," *see Wareham*, 143 P.3d at 308. Although the court's reasoning on this point was not explicit, it appears that the violent manner in which the perpetrator "ransacked" items in the home could have created a substantial risk of bodily injury to the victim and therefore could have constituted an assault. Citing this interpretation of the underlying assault statute, Petitioner argues that a prisoner may commit assault under the assault by prisoner statute, UTAH CODE § 76-5-102.5, by applying force solely against property without applying any physical force "*against the person of another*" as required by the ACCA's definition of a violent felony under the elements clause. *See* 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).

In essence, Petitioner argues that physical force is directed "against the person of another" under § 924(e)(2)(B)(i) only when the perpetrator personally exerts or generates the physical force that ultimately contacts the victim. Petitioner concedes, for example, that "using violent force to hurl a physical object at a person would constitute the use of violent force against a person," but insists that the commission of an assault through the indirect application of force to an object cannot be a use of physical force against the person of another under the elements clause. (Docket No. 15, at 6). Petitioner gives several examples that he believes would not meet the federal definition, but would nonetheless be crimes under Utah's assault by prisoner statute: "[U]sing force against property to create an obstacle that would create the risk of injury to a

pursuer, using force to damage the leg of a chair to create a risk of injury to someone sitting in the chair, or using force against property to create some sort of hazard to an unwitting victim." (*Id.*). Regardless of whether such acts are actually punishable under Utah's assault by prisoner statute, Petitioner's reading of the elements clause fails to account for recent Supreme Court precedent.

### A.   Petitioner's interpretation of the elements clause does not accord with Supreme Court precedent.

Petitioner's proffered interpretation of the elements clause must be rejected because it runs afoul of the Supreme Court's relatively recent decision in *United States v. Castleman*, 134 S. Ct. at 1414. The *Castleman* Court held that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id.* Citing *Johnson I*, the Court reemphasized that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *Id.* (quoting *Johnson I*, 559 U.S. at 138). Applying this definition to a hypothetical surreptitious poisoning, the Court explained that while the "act of sprinkling . . . poison" is not in and of itself forceful, "the act of employing poison knowingly as a device to cause physical harm" is clearly a "use" of force. *Id.* at 1515 (internal alterations omitted). Stated differently, "the knowing or intentional application of force is a 'use' of force," regardless of the method of application: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id.* Thus, whether through the direct application of force to the victim's body or through the employment of some indirect method or "device" such as poisoning, *id.* at 1414, an act that is intended to cause physical harm is a "*use* of physical force against the person of another," *see* 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added); *United States v. Winston*, 845 F.3d 876, 878 (8th Cir. 2017) ("'Physical force' is 'force exerted by

and through concrete bodies,' as opposed to 'intellectual or emotional force,' and it need not be applied directly to the body of the victim. Hypothetical scenarios involving no physical contact by the perpetrator (luring a victim to drink poison or infecting a victim with a disease) do not avoid coverage under § 924(e)(2)(B)(i)." (internal citations omitted) (quoting *Johnson I*, 559 U.S. at 138 and citing *Castleman*, 134 S. Ct. at 1414–15)). Thus, after *Castleman*, it is enough to satisfy the elements clause that a perpetrator makes deliberate "use" of physical force as a method "to cause physical harm." *See Castleman*, 134 S. Ct. at 1414–15.

In light of the conception of the "use of physical force" outlined in *Castleman*, the court must reject Petitioner's interpretation of the elements clause. By emphasizing the phrase "against the person of another" at the expense of the previous language in the clause, Petitioner distorts the meaning of § 924(e)(2)(B)(i) as a whole. The clause does not, as Petitioner suggests, require that the perpetrator of an offense *personally* exert or create the physical force that ultimately encounters the person of another. Under *Castleman*, it requires only that the perpetrator make deliberate "*use*" of physical force against the person of the victim—whether that force reaches the victim's person through direct or indirect means is irrelevant. *See* § 924(e)(2)(B)(i) (emphasis added); *Castleman*, 134 S. Ct. at 1415 ("[T]he word 'use' conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." (internal quotations omitted)); *id.* at 1414 ("That the harm occurs indirectly, rather than directly (as with a kick or a punch) does not matter.").

In short, the ACCA's elements clause encompasses both the direct and indirect "use of physical force against the person of another." *See* § 924(e)(2)(B)(i); *Winston*, 845 F.3d at 878. Moreover, to give the phrase "against the person of another" the import that Petitioner does would lead to absurd results. Under Petitioner's interpretation of § 924(e)(2)(B)(i), the firing of a

gun in the direction of a victim with intent to cause bodily injury would not qualify as a violent

felony under the ACCA "because it is the bullet, not the trigger, that actually strikes the victim."

*See Castleman*, 134 S. Ct. at 1415. This, as the *Castleman* Court observed, is an untenable result.

*See id.*

### B. *Rodriguez-Enriquez* and *Perez-Vargas* do not alter this conclusion.

Further, the conception of the "use of physical force" outlined in *Johnson I* and

*Castleman* also undermines the reasoning of *United States v. Rodriguez-Enriquez*, 518 F.3d 1191

(10th Cir. 2008) and *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005)—two cases

that might otherwise sustain Petitioner's interpretation of the elements clause.[6]

### 1. *Rodriguez-Enriquez*

First, in *Rodriguez-Enriquez*, the Tenth Circuit interpreted an identical elements clause

found in the application notes of § 2L1.2 of the Sentencing Guidelines, *see* USSG § 2L1.2 cmt.

n.1(B)(iii) (defining "crime of violence" as, *inter alia*, any crime "that has as an element the use,

---

[6] Petitioner insists that the reasoning of *Castleman* was confined to the elements clause of 18 U.S.C. § 921(a)(33)(A)(ii) that defines a "misdemeanor crime of domestic violence," and therefore cannot be construed to abrogate the reasoning of Tenth Circuit opinions interpreting the ACCA's elements clause or the similar elements clause found in the Sentencing Guidelines. While a similar view has been adopted in at least two circuits, *see Whyte v. Lynch*, 807 F.3d 463, 470–71 (1st Cir. 2015) (indicating that *Castleman*'s reasoning regarding the nature of "physical force" is confined to § 922(g) and cannot necessarily be used to interpret other elements clauses that require "violent force"); *United States v. Rico-Mejia*, No. 16-50022, —F.3d—, 2017 WL 568331, at *3 (5th Cir. Feb. 10, 2017) (holding that *Castleman* is limited to crimes of domestic violence), the court instead sides with those courts that have applied *Castleman*'s reasoning regarding the "use" of physical force to the elements clause of the ACCA, *see, e.g.*, *Winston*, 845 F.3d at 878. As an initial matter, the *Castleman* Court itself references interpretations of the ACCA elements clause as articulated in *Johnson I* to help define "the use . . . of physical force" within the elements clause of § 921(a)(33)(A)(ii). *See Castleman*, 134 S. Ct. at 1414 (quoting *Johnson I*, 559 U.S. at 138). Additionally, "*Castleman*'s analysis and determination of the meaning of the phrase 'use of physical force' should not, and cannot logically, be entirely divorced from the interpretation of the exact same phrase as used in other similar criminal contexts." *Miller v. United States*, 2016 WL 7256875 at *6 (D. Wyo. Dec. 15, 2016) (unpublished). And, more importantly here, this court finds that *Castleman* does indeed undermine previous reasoning regarding how physical force is *used* regardless of the level of that force: "[W]hile *Castleman* determined the level of force need not be *violent* for purposes of § 922(g)(9)—as distinguished from the Supreme Court's interpretation of the definition of 'violent felony' under the ACCA [in *Johnson I*]—*Castleman*'s determination of what constitutes [a] '*use* of physical force' applies equally in the context of the means by which an injury occurs: 'force exerted by and through concrete bodies, as opposed to intellectual force or emotional force.'" *Id.* (internal citation omitted) (emphasis in original and added) (citing *Castleman*, 134 S. Ct. at 1414).

attempted use, or threatened use of physical force against the person of another"). The court held that assault by nonconsensual administration of poison or other harmful substance under COLO. REV. STAT. ANN. § 18-3-203(1)(e) could be committed without the "use of physical force" and therefore could not be a categorical "crime of violence" under USSG § 2L1.2. *Rodriguez-Enriquez*, 518 F.3d at 1195. The court reasoned that the phrase "physical force" as used in the elements clause of USSG § 2L1.2 must mean force that "is generated mechanically." *Id.* at 1194. Thus, the court defined "physical force" as the transfer of "[k]inetic energy" from a perpetrator through a "fist, [weapon], or projectile . . . to the body of the victim." *See id.* Under that definition, a surreptitious poisoning under COLO. REV. STAT. ANN. § 18-3-203(1)(e) was not a "use of physical force" because "[t]he harm is caused by chemical action on the victim's body" and not by direct mechanical application of kinetic force to the victim's body. *See id.* at 1194–95.

But this reasoning is simply incompatible with *Johsnon I* and *Castleman*. The *Castleman* Court, citing *Johnson I*, reaffirmed that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" 134 S.Ct. at 1414 (quoting *Johnson I*, 559 U.S. at 138). This conception of the use of physical force undermines *Rodriguez-Enriquez*'s distinction between "mechanical" and "chemical action" in defining the "use of physical force"—instead, *Castleman* explains that the deliberate causation of physical harm is a "use of physical force," however the harm is achieved. *Id.* at 1414–15 ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter."); *see also United States v. Wing*, No. 16-cv-1219-WJM, 2016 WL 6803695, at *5 (D. Colo. Nov. 17, 2016) (unpublished), *appeal docketed*, No. 17-1007 (10th Cir. Jan. 12, 2017) ("[T]he discussion in *Rodriguez-Enriquez* that would tie the meaning of 'physical force' to a 'mechanical impact' or 'kinetic energy' is inconsistent with [*Johnson I*]."); *United States v. Pasley*, 2016 WL 7156787,

at *4 (W.D. Okla. Dec. 7, 2016) (unpublished), *appeal docketed*, No. 17-6033 (10th Cir. Feb. 1, 2017). Further, the Court implicitly rejected *Rodriguez-Enriquez*'s holding that "injury effected by chemical action on the body (as in poisoning or exposure to hazardous chemicals) should not be described as caused by *physical force*[,]" *Rodriguez-Enriquez*, 518 F.3d at 1195 (emphasis in original), by emphasizing that "the act of employing poison knowingly as a device to cause physical harm" is a "use of [physical] force," *Castleman*, 134 S. Ct. at 1415. After *Castleman*, any reasoning that limits "the use of physical force" to the application of force to the body of the victim through strictly mechanical means (i.e., "a fist, bat, or projectile"), *see Rodriguez-Enriquez*, 518 F.3d at 1194, plainly interprets the elements clause too narrowly, *see Winston*, 845 F.3d at 878 ("[After *Castleman*,] [h]ypothetical scenarios involving no physical contact by the perpetrator (luring a victim to drink poison or infecting a victim with a disease) do not avoid coverage under § 924(e)(2)(B)(i)."); *Miller*, 2016 WL 7256875, at *5–*7 (holding that *Castleman* abrogates much of *Rodriguez-Enriquez*'s reasoning regarding "the use . . . of physical force").

### 2. *Perez-Vargas*

For much the same reason, the court concludes that *Castleman* also limits the reasoning of *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005). There, the Tenth Circuit held that a conviction under Colorado's third-degree assault statute was not categorically a "crime of violence" because it did not necessarily "h[ave] as an element the use, attempted use, or threatened use of physical force against the person of another" as required by the Sentencing Guidelines. *Id.* at 1285–87 (quoting U.S.S.G. § 2L1.2, cmt. n.1(B)(iii)). Under Colorado law, an individual commits third degree assault when he "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means

of a deadly weapon." COLO. REV. STAT. § 18-3-204. The court reasoned that this statute focused on the "*result* of a defendant's conduct, i.e. bodily injury" and not the "*means* by which an injury occurs (the use of physical force)" as required by the Guidelines. *Perez-Vargas*, 414 F.3d at 1285. "In other words, Colorado's statute looks to the consequences of the conduct, however applied, whereas the Guidelines look to the type of conduct that causes the injury." *Id.* Thus, while it was "likely [that] most third-degree assaults will involve the use or threatened use of physical force," the statute, by its own terms, could be violated without the use of physical force: "[An individual may commit third-degree assault by] recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Id.* at 1286. Reasoning that these examples did not involve "the use or threatened use of 'physical force' as required by the Guidelines," the court held that the statute could not be considered a categorical "crime of violence." *Id.* at 1287.

As an initial matter, it is clear that reckless or otherwise negligent causation of bodily injury is not a "use" of physical force even under *Castleman*'s expansive interpretation of that phrase. *See* 134 S. Ct. at 1415 (reaffirming the holding, articulated in *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), "that the 'use' of force must entail a 'a higher degree of intent than negligent or merely accidental conduct'"). Thus, a statute that criminalizes "recklessly shooting a gun in the air to celebrate," like the Colorado statute at issue in *Perez-Vargas*, cannot be a categorical crime of violence. *See Perez-Vargas*, 414 F.3d at 1286. To this extent, *Perez-Vargas* remains untouched after *Castleman*.

But, after *Castleman*, it is also clear that "intentionally placing a barrier in front of a car causing an accident[] or intentionally exposing someone to hazardous chemicals" could be a "use" of physical force against the person of another. *See Castleman*, 134 S. Ct. at 1414 ("[A]

14

'bodily injury' must result from 'physical force.'"); *id.* at 1415 (describing a surreptitious poisoning as a "'use' of force" and asserting that whether "the harm occurs indirectly, rather than directly (as with a kick or a punch), does not matter"). Thus, insofar as *Perez-Vargas* indicates that deliberate applications of physical force through indirect means are not a "use . . . of physical force against the person of another[,]" the decision's reasoning is limited by *Castleman*. *See Miller*, 2016 WL 7256875, at *5–7 (unpublished) (discussing the impact of *Castleman* on *Perez-Vargas* and *Rodriguez-Enriquez*).

## C.  Utah's assault by prisoner statute has as an element the use, attempted use, or threatened use of physical force against the person of another.

Once the elements clause is correctly understood, it becomes clear that Utah's assault by prisoner statute requires "the use, attempted use, or threatened use of physical force against the person of another." *See* 18 U.S.C. § 924(e)(2)(B)(i). The fact that Utah's simple assault statute may be violated by the application of force "exclusively against property that creates a substantial risk of injury to another person," (Docket No. 15, at 6), does not change the analysis. Such an act could only constitute an assault by prisoner if it were perpetrated with the intent "to cause bodily injury." *See* UTAH CODE § 76-5-102.5. That the prisoner causes, attempts to cause, or threatens to cause that injury "indirectly, rather than directly (as with a kick or a punch), does not matter." *See Castleman*, 134 S. Ct. at 1415. Thus, even a prisoner who uses force or violence "exclusively against property" *intending* to somehow cause bodily injury to a victim is still "employing" that force or violence "knowingly as a device to cause physical harm." *See id.* And that act is plainly a "use" of physical force against the person of another. Therefore, Utah's assault by prisoner statute "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

## II.       Violent Force

In the alternative, Petitioner argues that the assault by prisoner statute does not categorically require the level of physical force demanded by the elements clause. (Docket No. 15, at 8–9). As explained previously, the Supreme Court has determined that the phrase "physical force" in the context of § 924(e)(2)(B)(i) "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. The Court indicated that "violent physical force" under the ACCA need not result in actual physical injury because "[i]t might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *See Johnson I*, 559 U.S. at 143; *Harris*, 844 F.3d at 1265 (citing to Justice Scalia's concurrence in *Castleman*, 134 S. Ct. at 1421 (Scalia, J., concurring), which explained that "'force capable of causing physical pain or injury,' includes such conduct as '[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling " (alterations in original)). In defining the term "physical force" as "*violent* physical force," *Johnson I*, 559 U.S. at 140, the Court distinguished the force necessary to meet the ACCA's requirements from the force necessary to constitute common law battery, which could be committed with nothing more than "the slightest offensive touching[,]" *Harris*, 844 F.3d at 1265 (citing *Johnson I*, 559 U.S. at 139).

With this definition in mind, Petitioner points to the underlying assault statute, which may be violated through the use of "unlawful force or violence."[7]  *See* UTAH CODE § 76-5-102. Petitioner argues that "unlawful force"[8] is plainly distinguishable from "violence" in the assault

---

[7] Each permutation of the underlying assault statute requires some "unlawful force or violence," UTAH CODE § 76-5-102(a)–(c), except for the threat provision, which requires that a threat to do bodily injury be "accompanied by a show of *immediate* force or violence." *See* § 76-5-102(b) (emphasis added). Even (c) criminalizes an act that "creates a substantial risk of bodily injury to another" only when the act is committed with "unlawful force or violence." § 76-5-102(b).

[8] Neither Petitioner nor the government has pointed to a specific definition of this term in the statute itself or Utah case law, and the court is not aware of any such definition under Utah law. It is worth noting that the Tenth Circuit has cited to Utah's assault statute, with its focus on bodily injury, as an example of the trend "*away from the broad*

statute ("unlawful force *or* violence," *see id.* (emphasis added)), implying that the statute may be

violated by conduct that is less than violent. As a result, Petitioner contends, a prisoner may

conceivably commit an assault under § 76-5-102.5 with mere offensive touching or some other

less-than-violent force.[9] Thus, Petitioner argues, the assault by prisoner statute encompasses a

broader range of conduct than the elements clause permits and may not be properly categorized

as a violent felony under the ACCA. The court disagrees.

First, it is clear from the plain language of Utah's assault by prisoner statute that the

statute encompasses a narrower range of conduct than the underlying assault statute standing

alone. Specifically, violation of the assault by prisoner statute requires a specific intent to cause

bodily injury. *See* UTAH CODE § 76-5-102.5; *State v. Dock*, 585 P.2d 56, 57 (Utah 1978)

(explaining that the type of assault prohibited by § 76-5-102.5 "requires a mens rea to cause

bodily injury"). Thus, while Utah's assault statute criminalizes a broad range of assaultive

conduct, including reckless conduct, *see State v. McElhaney*, 579 P.2d 328, 328 (Utah 1978), §

---

common law definition" of physical force that includes mere offensive touching. *See United States v. Hays*, 526 F.3d 674, 679 n.2 (10th Cir. 2008) (emphasis added).

[9] In briefing and at oral argument, Petitioner seemed to argue that, after *Castleman, Johnson I* 's definition of "violent physical force" was narrowed to physical force capable of causing *serious* injury, as opposed to "a cut, abrasion [or] bruise," which Petitioner asserts could be caused by "*de minimis* [or nonviolent] force." (*See* Docket No. 15, at 9) (alterations in original). Petitioner's argument lacks support in either *Johnson I* or in *Castleman*. *Johnson I* made no distinction between "serious" and "minor" injuries when defining "violent physical force." And while the *Castleman* majority questioned whether "[m]inor uses of force" like "a squeeze on the arm [that] causes a bruise" could "constitute 'violence' in the generic sense," *id.* at 1412, the Court ultimately did not decide that issue and plainly reaffirmed *Johnson I*'s definition of "physical force" under the ACCA. *See id.* at 1410–11, 1414; *United States v. Glover*, No. 16-3775, 2017 WL 838280, at *2 (6th Cir. Mar. 3, 2017) (unpublished) ("In *Castleman*, the Court did not in any way reconsider the meaning of 'physical force' as used in 18 U.S.C. § 924(e)(2)(B)."); *cf. Harris*, 844 F.3d at 1265 n.1 (rejecting an interpretation of *Castleman* that narrowed *Johnson I* by defining "'pushing, grabbing, shoving, slapping, and hitting' as non-violent force for purpose of *Johnson I*" (emphasis omitted)). The *Castleman* Court held only that the causation of "bodily injury" under TENN. CODE ANN. § 39-11-106(a)(2) (defining "bodily injury" as "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty") required, *at a minimum*, the application of "force in the common-law sense." *See Castleman*, 134 S. Ct. at 1414. Thus, the Tennessee statute *at least* met the definition of a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A). *See id.* The Court explicitly refused to decide whether such injuries necessitated the application of "violent force, under *Johnson [I]*'s definition of that phrase," ultimately leaving the question open. *Id.*; *see also United States v. Rice*, 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (explaining that the *Castleman* Court "explicitly reserved" the question of whether the deliberate causation of physical injury necessitates the application of *violent* force).

76-5-102.5 criminalizes *only* assault that is committed by a prisoner with intent to cause bodily injury, *see* UTAH CODE § 76-5-102.5.

Whatever level of "unlawful force" may be sufficient to satisfy the underlying assault statute, the intent to cause bodily injury required by Utah's assault by prisoner statute is inconsistent with anything less than the violent physical force defined by *Johnson I*. *See* 559 U.S. at 140 (defining "physical force" as used in the ACCA as "force *capable of causing physical pain or injury* to another person" (emphasis added)). As explained above, after *Castleman*, the *deliberate* causation of physical harm, whether through direct or indirect means, is a use of physical force against the person of another. *See Castleman*, 134 S. Ct. at 1414 ("[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force."). And, as Justice Scalia explained, "it is impossible to cause physical injury without using force 'capable of' producing that result." *Castleman*, 134 S. Ct. at 1416–17 (Scalia, J., concurring in part and concurring in the judgment) (quoting *Johnson I*, 559 U.S. at 140); *see also Rice*, 813 F.3d at 706 (applying Justice Scalia's interpretation to a "crime of violence" analysis under the Sentencing Guidelines). It cannot be seriously argued that a prisoner who specifically intends to cause bodily injury would express that intent by gently tapping his victim on the shoulder—he would undoubtedly apply (or at least attempt or threaten to apply) force commensurate with his intent to cause bodily injury—i.e., "force capable of producing" the physical injury he intends. *See Johnson I*, 559 U.S. at 140. Thus, § 76-5-102.5 by its very terms requires a level of force greater than mere offensive touching or the like.

Even a theoretical assault by a prisoner under "the substantial risk" clause of subsection (c) of the underlying assault statute would satisfy *Johnson I*'s definition of violent physical force. An act of unlawful force or violence that creates a substantial risk of bodily injury under § 76-5-

102(c), when committed with the specific intent to cause bodily injury as required by § 76-5-102.5, is nothing more than an unsuccessful attempt to cause physical harm. The fact that the perpetrator fails to actually cause bodily injury and only creates a risk of such injury does not change the injurious level of force he *intended* to apply to the victim.[10]

Even if the assault by prisoner statute somehow theoretically criminalizes offensive touching or some other nonviolent conduct that does not meet *Johnson I*'s definition of "physical force," there is not a "realistic probability" that mere offensive touching would be charged under the statute. *See Moncrieffe*, 133 S. Ct. at 1684–85 (quoting *Duenas-Alvarez*, 549 U.S. at 193). The few Utah court opinions analyzing § 76-5-102.5 bolster this conclusion. For example, the Utah Court of Appeals has indicated in an unpublished opinion that mere offensive touching might be insufficient to constitute an assault under § 76-5-102.5. *State v. Kelsey*, 2005 WL 3220274 at *1 (Utah Ct. App. 2005) (unpublished) (finding that evidence of prisoner's threats to victim and a prison guard were important to establishing guilt under § 76-5-102.5 because "the victim was a reluctant witness" who would only testify that the prisoner "merely brushed him with his fingers"). The court also indicated that evidence of "anger and outrage that could lead to an intentional assault" was consistent with the intent to cause bodily injury. *Id.* (citing § 76-5-102.5) (reasoning that evidence of a prisoner's threats to "kill [the victim] and to sexually assault [a] guard until the guard died" were probative of an intent to cause bodily injury). The other Utah cases dealing directly with the assault by prisoner statute also suggest that the assault by prisoner

---

[10] Similarly, the fact that a perpetrator deliberately causes (or attempts to cause or threatens to cause) physical harm through indirect means, as through a "device" like poison, *see Castleman*, 134 S. Ct. at 1415, does not change the injurious level of force that was *intended* to act on the victim. As explained above, deliberate application of force indirectly through a "device" in order "to cause physical harm" is a "use of physical force" under *Castleman*. *See* 134 S. Ct. at 1415. That the individual intends to cause that harm "indirectly, rather than directly (as with a kick or punch), does not matter." *See id.*

statute indicates a decidedly violent level of physical force.[11] *Mackin v. State*, 387 P.3d 986, 990

(Utah 2016) (arrestee head-butted the arresting officer while screaming vulgarities); *State v.*

*Rupert*, 339 P.3d 955, 957, 960 (Utah Ct. App. 2014) (prisoner tackled another inmate from

behind, struck him repeatedly, bit his ear, and left him in a "'pool' of his own blood"); *State v.*

*Davis*, 324 P.3d 678, 679 (Utah Ct. App. 2014) (prisoner threw a closed-fist overhand punch and

struck a corrections officer on the arm, leaving a large bruise); *State v. Blanco*, 2006 WL 729488

(Utah Ct. App. 2006) (per curiam) (unpublished) (prisoner stomped the victim repeatedly with

enough force to necessitate surgical repair of the victim's eye socket); *State v. Etherington*, 2003

WL 22682104 (Utah Ct. App. 2003) (unpublished) (prisoner threatened physical harm and then

used a table to "slam the [victim] into the wall"); *State v. Starkey*, 1999 WL 33244792 (Utah Ct.

App. 1999) (unpublished) (arrestee "head-butted and otherwise accosted" an arresting officer);

*State v. Griego*, 933 P.2d 1003, 1005 (Utah Ct. App. 1997) (arrestee repeatedly kicked officers in

the chest while they struggled to prevent him from fleeing); *State v. Pilling*, 875 P.2d 604, 606

(Utah Ct. App. 1994) (arrestee used an object to strike an officer on the side of the head, breaking

a tooth and severely bruising his cheek); *State v. Duran*, 772 P.2d 982, 984 (Utah Ct. App. 1989)

(prisoner threw multiple punches at correctional officer, breaking his nose); *State v. Jimenez*, 761

P.2d 577, 578 (Utah Ct. App. 1988) (arrestee allegedly kicked an officer in the stomach); *State v.*

*Christensen*, 676 P.2d 408, 410 (Utah 1984) (arrestee allegedly kicked arresting officer in the leg

and punched him in the face); *Dock*, 585 P.2d at 56 (prisoner allegedly attacked a guard with a

broken jar causing minor facial cuts); *State v. Sibert*, 587 P.2d 126, 127 (Utah 1978) (prisoner

threw a chair at a prison counselor and hit another counselor with his fist); *State v. Maestas*, 564

P.2d 1386, 1387 (Utah 1977) (prisoner allegedly punched the victim in the face multiple times

---

[11] Although many of these cases predate Petitioner's convictions, the court is unaware of any material alteration to
the strictures of the assault by prisoner statute since its passage in 1974.

leaving "abrasions, bruises, and lacerations"). In short, the court fails to see how any conduct other than the violent physical force necessitated by the ACCA could reasonably violate the strictures of § 76-5-102.5.

**CONCLUSION**

Based on the foregoing, the court holds that Utah's assault by prisoner statute, UTAH CODE § 76-5-102.5, "has as an element the use, attempted use, or threatened use of physical force against the person of another" and is categorically a "violent felon[y]" for purposes of 18 U.S.C. § 924(e)(2)(B)(i). Therefore, Petitioner's convictions under UTAH CODE § 76-5-102.5 are properly categorized as violent felonies. These convictions, coupled with his previous drug conviction, indicate that Petitioner has three qualifying felonies under the ACCA and his sentencing enhancement under the ACCA was proper. Accordingly, the court must deny his motion to vacate and correct his sentence.

Petitioner's Motion (Docket No. 1) is therefore **DENIED** and his petition is **DISMISSED**.

Additionally, as explained above, the government's Motion to Strike (Docket No. 19) is also **DENIED**.

IT IS SO ORDERED.

DATED this 6th day of April, 2017.

BY THE COURT

Jill N. Parrish
United States District Court Judge

21